

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00610-CV

**LAREDO MERCHANTS ASSOCIATION**,
Appellant

v.

**CITY OF LAREDO**, Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2015-CVQ-00-1077-D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting Opinion by:  Luz Elena D. Chapa, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  August 17, 2016

REVERSED, RENDERED AND REMANDED

This is a statutory construction case in which we must determine whether section 361.0961

of the Solid Waste Disposal Act ("the Act") preempts a checkout bag ordinance enacted by the

City of Laredo ("the City") – City of Laredo Ordinance No. 2014-O-064, codified at section 33-

455 of the Laredo City Code of Ordinances ("the Ordinance").  On appeal, appellant Laredo

Merchants Association ("the Merchants") argues the trial court erred in granting the City's motion

for summary judgment because the Ordinance is preempted by section 361.0961.  Because we

conclude the Ordinance is inconsistent with section 361.0961 and therefore preempted by it, we

reverse the trial court's judgment, render judgment in favor of the Merchants, and remand the cause to the trial court to determine whether the Merchants are entitled to an award of attorney's fees.

## BACKGROUND

In December 2003, the City implemented a strategic plan aimed at creating a "trash-free city." As part of this strategic plan, the City adopted the Ordinance on June 2, 2014, with an effective date of April 30, 2015. Designed to "reduce litter from discarded plastic bags," the Ordinance makes it unlawful for commercial establishments to provide checkout bags to customers. Laredo, Tex., Laredo City Code §§ 33-451, 33-455. According to the Ordinance, the phrase "checkout bag" refers to any "plastic one-time-use carryout bag that is provided by a commercial establishment to a customer at the point of sale and is less than 4 Mils thick . . . or a single-use paper bag." *Id.* § 33-454. The Ordinance also includes a list of exceptions[1] and provides that a violation subjects retailers to a fine of up to $2,000.00 per violation. *Id.* § 33-461.

Approximately one month before the Ordinance was to take effect, the Merchants filed suit against the City, seeking declaratory and injunctive relief. In its suit, the Merchants asked the trial court to declare the Ordinance unenforceable because it is preempted by section 361.0961 of the Act. *See* TEX. HEALTH & SAFETY CODE § 361.0961 (West 2016) (prohibiting local governments

---

[1] The Ordinance does not apply to the following bags:

1. Laundry dry cleaning bags, door-hanger bags, newspaper bags, or packages of multiple bags intended for use as garbage, pet waste, or yard waste;
2. Bags provided by pharmacists or veterinarians to contain prescription drugs or other medical necessities;
3. Bags used by restaurants to take away prepared food;
4. Bags used by a consumer inside a business establishment to [contain bulk food, frozen food, flowers and plants, or prepared food]; and
5. Bags used by a non-profit or charity to distribute [food and household items].

*Id.* at § 33-459.

from adopting ordinance that prohibits or restricts, for solid waste management purposes, sale or use of container or package in manner not authorized by state law). The Merchants also sought a temporary restraining order to enjoin the City from enforcing the Ordinance.[2]

Ultimately, the City filed a traditional motion for summary judgment, contending section 361.0961 of the Act does not preempt the Ordinance because, as a matter of law, section 361.0961 does not clearly and unmistakably prohibit a city from banning checkout bags as defined by the Ordinance. In its motion, the City argued: (1) a "checkout" bag as defined by the Ordinance is not a "container" or "package" within the meaning of section 361.0961; (2) the Ordinance does not regulate checkout bag use for solid waste management purposes; (3) the City is authorized to regulate checkout bags under section 551.002 of the Local Government Code; and (4) the Ordinance is a valid exercise of the City's police power. *See* TEX. LOC. GOV'T CODE § 551.002 (West 2015) (providing that home-rule municipality may prohibit pollution and protect watersheds).

In response, the Merchants filed a cross motion for partial summary judgment, arguing section 361.0961 of the Act preempts the Ordinance because the Ordinance is essentially inconsistent with, and therefore preempted by, section 361.0961 as a matter of law. According to the Merchants, the Ordinance is inconsistent with section 361.0961 because: (1) a "checkout bag" as defined by the Ordinance is a "container" or "package" as provided in section 361.0961; and (2) the Ordinance's purpose is to regulate solid waste management. The Merchants also argued that whether the Ordinance is within the City's authority under section 551.002 of the Local Government Code or within its police power is irrelevant to the preemption issue. *See id.*

---

[2] After a temporary injunction hearing, the Ordinance was amended to clarify it prohibited the sale of checkout bags. The amended version reads, "It shall be unlawful for any commercial establishment to provide in any manner including for free, by sale or otherwise, checkout bags to customers except as outlined by this article." Laredo, Tex. Ordinance 2015-O-057 (April 27, 2015). This amended version has not yet been codified.

After reviewing the motions, the trial court granted summary judgment in favor of the City and denied the Merchants' motion. In its final judgment, the trial court declared a reasonable construction exists under which both the Ordinance and section 361.0961 of the Act could be effective, and therefore, section 361.0961 does not preempt the Ordinance. The Merchants then perfected this appeal.

## ANALYSIS

On appeal, the Merchants argue the trial court erred in granting the City's traditional motion for summary judgment because the Ordinance is inconsistent with and therefore preempted by section 361.0961 of the Act as a matter of law. According to the Merchants, the Ordinance is preempted by section 361.0961 because: (1) it prohibits or restricts the sale or use of "containers" or "packages;" (2) it was adopted for a "solid waste management purpose;" (3) the manner in which it prohibits the use of "checkout bags" is not within the City's police power; and (4) it is clearly and unmistakably at odds with section 361.0961.

### *Standard of Review*

We review a trial court's grant of summary judgment de novo. *Katy Venture, Ltd. v. Cremona Bistro Corp.*, 469 S.W.3d 160, 163 (Tex. 2015); *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 600 (Tex. App.—San Antonio 2013, pet. denied). Traditional summary judgment is proper only when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *BCCA Appeal Grp., Inc. v. City of Hous.*, No. 13-0768, 2016 WL 1719182, at *2 (Tex. April 29, 2016); *Katy Venture*, 469 S.W.3d at 163; *Greater San Antonio Builders Ass'n*, 419 S.W.3d at 600-01. We take all the evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Katy Venture, Ltd.*, 469 S.W.3d at 163; *Greater San Antonio Builders Ass'n*, 419

S.W.3d at 600. Once the movant meets this burden of establishing each element of its claim as a matter of law, the burden shifts to the nonmovant to disprove or raise a fact issue as to at least one of the elements of the movant's claim. *Katy Venture, Ltd.*, 469 S.W.3d at 163.

When, as is the case here, both parties move for summary judgment and the trial court grants one motion but denies the other, we review both motions and render the judgment the trial court should have rendered. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007).

### *Applicable Law – Preemption*

Laredo is a home-rule city. *See City of Laredo v. Webb Cty.*, 220 S.W.3d 571, 574 (Tex. App.—Austin 2007, no pet.). Home-rule cities possess broad discretionary powers of self-government and look to the Legislature for limitations on their powers. TEX. LOC. GOV'T CODE § 51.072(a) (West 2008); *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2 (citing *Dall. Merch.'s & Concessionaire's Ass'n v. City of Dall.*, 852 S.W.2d 489, 490-91 (Tex. 1993)); *Southern Crushed Concrete, LLC v. City of Hous.*, 398 S.W.3d 676, 678 (Tex. 2013); *RCI Ent. (San Antonio), Inc. v. City of San Antonio*, 373 S.W.3d 589, 595 (Tex. App.—San Antonio 2012, pet. ref'd) (specifying courts do not determine whether Legislature made grants of authority). A home-rule city cannot enact an ordinance that contains a provision inconsistent with the constitution or general laws of the state. TEX. CONST. art. XI, § 5(a); *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 490-91; *RCI Ent.*, 373 S.W.3d at 595. A home-rule city ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it is inconsistent with the state statute. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595.

If the Legislature chooses to preempt a particular subject matter that is usually part of a home-rule city's broad discretionary powers, the Legislature must do so with "unmistakable

clarity." *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *Southern Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. Merely because the Legislature has enacted a law addressing a particular subject matter does not automatically mean all of the subject matter is completely preempted. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. This is because "[a] general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached." *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *see also Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595-96; *Greater San Antonio Builders Ass'n*, 419 S.W.3d at 600. In other words, both the city ordinance and general law will be enforced so long as it is possible under any reasonable construction. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595-96; *Greater San Antonio Builders Ass'n*, 419 S.W.3d at 600-01. Nevertheless, if it is not possible to reconcile the city ordinance and general law, then the general law trumps the ordinance, making the ordinance unenforceable. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595-96; *Greater San Antonio Builders Ass'n*, 419 S.W.3d at 600-01.

### *Application*

As stated above, the Merchants contend the Ordinance is preempted by section 361.0961 of the Act because it is inconsistent with section 361.0961 for the following reasons: (1) it prohibits or restricts the sale or use of "containers" or "packages;" (2) it was adopted for a "solid waste management purpose;" (3) the manner in which it prohibits the use of "checkout bags" is not within the City's police power; and (4) it is clearly and unmistakably at odds with section 361.0961.

### 1. *Police Powers and Unmistakable Clarity*

We begin our analysis by addressing the Merchants' third and fourth arguments regarding whether the Ordinance is within the City's police powers and whether the Act limits that police power with unmistakable clarity. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3 (addressing whether legislative limitation on home-rule municipality's police power appears with unmistakable clarity first); *S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491. Because these issues are similar, we will address them together.

The City argues section 551.002 of the Local Government Code authorizes it to regulate litter from discarded plastic bags. Under that section, a home-rule city may prohibit the pollution of watersheds by policing water sources. *See* TEX. LOC. GOV'T CODE § 551.002. However, as set out above, the Legislature may limit a home-rule city's police power regarding a particular subject matter so long as that limitation appears with unmistakable clarity. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. Thus, we must determine whether section 361.0961 of the Act limits the City's police power to prevent the pollution of watersheds with unmistakable clarity. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. To do this, we must conduct a statutory construction analysis and ascertain the intent of the Legislature. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3.

Statutory construction is a question of law we review de novo. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3. When construing a statute, we must give effect to the Legislature's intent. *Id*. To determine the Legislature's intent, we start with the plain language of the statute and view the statute as a whole as opposed to viewing isolated provisions. *Id*. at *3, *6; *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). This is because the plain meaning of the text is the

best expression of legislative intent. *BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *Molinet*, 356 S.W.3d at 411. We do not consider statements made during the legislative process as evidence of the Legislature's intent. *Molinet*, 356 S.W.3d at 414. Rather, "the Legislature expresses its intent by the words it enacts and declares to be the law." *Id.*

When a statute defines a word, we are bound by that definition; however, we will apply ordinary meanings to undefined words unless a different or more precise meaning is apparent from the word's use. *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015); *City of Hous. v. Bates*, 406 S.W.3d 539, 543-44 (Tex. 2013); *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). When a statute is unambiguous, "we adopt the interpretation supported by the plain language unless such an interpretation would lead to absurd results." *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 439. With these rules in mind, we now consider whether section 361.0961 of the Act expresses the Legislature's intent to limit the City's police power to prevent the pollution of watersheds with unmistakable clarity.

To begin, the Act governs the management and control of solid waste materials. TEX. HEALTH & SAFETY CODE § 361.002; *Citizens Against the Landfill in Hempstead v. Tex. Commission on Envtl. Quality*, No. 03-14-00718-CV, 2016 WL 1566759, at *3 (Tex. App.— Austin April 13, 2016, no pet.) (mem. op.) Its policy and purpose is "to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste, including accounting for hazardous waste that is generated." TEX. HEALTH & SAFETY CODE § 361.002; *Citizens Against the Landfill in Hempstead*, 2016 WL 1566759, at *3. In an effort to achieve this purpose, the Act authorizes the Texas Commission on Environmental Quality's ("TCEQ") to regulate the management of municipal solid waste disposal. TEX. HEALTH & SAFETY CODE § 361.011; *Citizens Against the Landfill in Hempstead*, 2016 WL 1566759, at *3.

Section 361.0961 of the Act states a local government may not adopt an ordinance that "prohibit[s] or restrict[s], for solid waste management purposes, the sale or use of a container or package in a manner not authorized by state law." TEX. HEALTH & SAFETY CODE § 361.0961. By its plain language, section 361.0961 specifically addresses a particular subject matter – the sale or use of containers or packages for solid waste management purposes – and is unmistakably aimed at prohibiting local governments from enacting certain ordinances. By prohibiting the adoption of an ordinance prohibiting or restricting that particular subject matter, section 361.0961 unmistakably limits a local government's police powers, including the police power outlined in section 551.002 of the Local Government Code. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595.

Accordingly, we conclude the language of section 361.0961 of the Act unmistakably expresses the Legislature's desire to preempt any ordinance that prohibits the sale or use of a container or package for solid waste management purposes. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *3; *S. Crushed Concrete*, 398 S.W.3d at 678; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. Because section 361.0961 expressly prohibits the adoption of any such ordinance, any ordinance prohibiting the sale or use of a container for solid waste management purposes cannot be in harmony with the statute. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *10. Thus, our next inquiry in determining whether the Ordinance is preempted is whether the Ordinance prohibits or restricts the sale or use of a container or package for solid waste management purposes. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *7; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595. This requires us to consider an analysis of the Merchants' first and second arguments.

    *2.  Whether the Ordinance Prohibits or Restricts the Sale or Use of "Containers" or "Packages"*

According to the Merchants, the Ordinance is inconsistent with, and therefore preempted by, section 361.0961 of the Act because a "checkout bag" as defined by the Ordinance is a "container" or "package" within the meaning of section 361.0961. To support its position, the Merchants point to a Texas Attorney General opinion, which concludes that a "single-use plastic bag is a container within the meaning of [section 361.0961 of the Act]." *See* Tex. Att'y Gen. Op. No. GA-1078 (2014). The Merchants also point to a number of cases in which Texas courts have recognized plastic bags are a type of package. *See, e.g., Davis v. State*, 202 S.W.3d 149, 156-57 (Tex. Crim. App. 2006) (noting "that drugs are commonly packaged, carried, or transported in plastic bags"); *Yamaha Motor Corp. v. Motor Vehicle Div., Tex. Dep't of Transp.*, 860 S.W.2d 223, 228 (Tex. App.—Austin 1993, writ denied) (holding plaintiff had obligations in regard to parts packaged in resealable plastic bags); *Furr's Supermarkets, Inc. v. Arellano*, 492 S.W.2d 727, 728 (Tex. Civ. App.—El Paso 1973, writ ref'd n.r.e.) (stating in slip and fall lawsuit product that spilled was packaged in plastic type bag).

Neither section 361.0961 nor the Act define the terms "container" or "package;" therefore, we must apply an ordinary meaning to the terms. *See PlainsCapital Bank*, 459 S.W.3d at 556; *Bates*, 406 S.W.3d at 544; *TGS-NOPEC Geophysical*, 340 S.W.3d at 439. When determining the plain and ordinary meaning of a word, Texas courts often consult dictionaries to ascertain a word's natural meaning. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Here, *Webster's Third New International Dictionary* defines "bag" as a type of "*container* made of paper, cloth, mesh, metal foil, plastic, or other flexible material." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 162 (2002) (emphasis added); *see also* THE NEW OXFORD AMERICAN DICTIONARY 119 (2d ed. 2005) (defining bag as "a container of flexible material with an opening at the top, used for carrying

things"). Under an ordinary meaning analysis, we conclude a "checkout bag" – or more specifically, a "plastic one-time-use carryout bag" or "single-use paper bag" – is a type of "container" or "package" within the meaning of section 361.0961. *See PlainsCapital Bank*, 459 S.W.3d at 556; *see also* Tex. Att'y Gen. Op. No. GA-1078 (2014) (concluding that single-use plastic bag is container within the meaning of section 361.061).

The City argues that by using the terms "package" and "container," the Legislature intended to refer only to closed vessels or wrappings and not checkout bags. We disagree. The plain language of section 361.0961 or the Act does not limit the terms "containers" or "packages" to closed vessels or wrappings as the City contends. *See* Tex. Att'y Gen. Op. No. GA-1078 (2014). And although the City points to an explanation by the bill's sponsor that the bill was intended to prohibit municipalities from adopting rules regulating "wasteful packaging, Styrofoam cups and bottle returns," we decline to consider or give weight to that explanation as such statements are not evidence of the Legislature's intent. *See Molinet*, 356 S.W.3d at 414. Instead, we must look to the plain language of section 361.0961 to determine what the Legislature intended. *See id.* Here, the plain language of section 361.0961 does not limit the types of "containers" or "packages" to closed vessels or wrappings; rather, it uses the words "containers" or "packages," which by their plain meaning includes checkout bags.

Accordingly, we conclude a "checkout bag" as defined by the Ordinance is a type of "container" or "package" as those terms are used in section 361.0961 of the Act. We now turn to our attention to our next inquiry: whether the Ordinance prohibits the sale or use of checkout bags for "solid waste management purposes." *See* TEX. HEALTH & SAFETY CODE § 361.0961.

3. *Whether the Ordinance Was Adopted for "Solid Waste Management" Purposes*

The Merchants argue the Ordinance's express purpose is to manage solid waste by controlling the issuance of checkout bags by retailers to their customers. To support its position,

the Merchants point to the language of the "Purpose and Goals" section of the Ordinance, which states the Ordinance seeks to promote the prevention of litter. The City argues the Ordinance was not adopted for "solid waste management" purposes because the Ordinance does not regulate the management of solid waste. According to the City, the Ordinance was adopted with the intention of regulating the act of "providing single-use bags to customers for holding and carrying away their purchases." The City explains that by regulating this activity, the Ordinance aims to prevent litter as opposed to managing solid waste. We, again, disagree with the City.

To determine whether the Ordinance was adopted for a "solid waste management" purpose, we must once again conduct a statutory construction analysis and examine the meaning of "solid waste management" as defined by the Act. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *PlainsCapital*, 459 S.W.3d at 556; *Bates*, 406 S.W.3d at 544. Here, the Act defines "solid waste" as "garbage, rubbish, [and] refuse" and "management" as "the systematic control of the activities of generation, source separation, collection, handling, storage, transportation, processing, treatment, recovery, or disposal of solid waste." TEX. HEALTH & SAFETY CODE § 361.003(18), (34).

With this in mind, we turn our attention to the purposes outlined by the Ordinance. The Ordinance seeks to:

A. To promote the beautification of the City through prevention of litter generated from discarded checkout bags.
B. To reduce costs associated with floatable trash controls and the maintenance of the municipal separate stormwater sewer system.
C. To protect life and property from flooding that is a consequence of improper stormwater drainage attributed in part to obstruction by litter from checkout bags.

Laredo, Tex., Laredo City Code §§ 33-451. When considering these purposes, we conclude the Ordinance was adopted to control the generation of solid waste as produced by litter resulting from discarded checkout bags. Here, the Ordinance identifies discarded checkout bags as litter, which

is naturally understood as "refuse or rubbish," which in turn is a type of "solid waste" as defined by the Act. *See id*; *see also* TEX. HEALTH & SAFETY CODE § 361.003 (34); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1322 (2002). The Ordinance then goes on to state it seeks to prevent the generation of litter – a type of management activity. *See* TEX. HEALTH & SAFETY CODE §§ 361.003 (18), (34).

Although the City argues the "prevention of litter" is not within the meaning of "management," we disagree because by prohibiting the sale and use of bags to prevent them from becoming litter, the Ordinance is regulating the generation of litter. Controlling the generation of solid waste is the "management" of solid waste as that term is defined by the Act. Furthermore, the City's argument ignores the underlying effect of the Ordinance. *See id*. § 361.003 (18), (34). The Texas Supreme Court has stated that when determining whether an ordinance is preempted by a state law, Texas courts must consider not only the purpose of an ordinance as defined by that ordinance, but also the actual effect of that ordinance. *See S. Crushed Concrete*, 398 S.W.3d at 678-79 (recognizing that city can circumvent preemption by passing ordinances that "purport to regulate something other than" a subject matter reserved by the state). Here, the actual effect of the Ordinance is to manage solid waste by regulating litter produced from discarded checkout bags. *See id*.

Thus based on the foregoing analysis, we hold the Ordinance is inconsistent with section 361.0961 of the Act and therefore unenforceable as a matter of law. *See BCCA Appeal Grp., Inc.*, 2016 WL 1719182 at *2; *Dall. Merch.'s*, 852 S.W.2d at 491; *RCI Ent.*, 373 S.W.3d at 595; *Greater San Antonio Builders Ass'n*, 419 W.W.3d at 600. The Ordinance does exactly what the Act intends to prevent – regulate the sale or use of plastic bags for solid waste management purposes. We, therefore, hold the trial court erred in granting summary judgment in favor of the City, and we

reverse the trial court's judgment and render judgment that the Ordinance is preempted by section 361.0961 of the Act as a matter of law.

### *Remand for Attorney's Fees*

The Declaratory Judgment Act states, "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015); *North Tex. Municipal Water Dist. v. Ball*, 466 S.W.3d 314, 323-24 (Tex. App.—Dallas 2015, no pet.) (remanding appeal involving cross motions for summary judgment to trial court for determination of attorney's fees). Here, in its petition and motion for summary judgment, the Merchants pled for attorney's fees as provided under the Declaratory Judgment Act. Because we are reversing the trial court's judgment and rendering summary judgment in the Merchants' favor, we remand the cause for the trial court to reconsider the issue of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2015); *North Tex. Municipal Water Dist.*, 466 S.W.3d at 323-24.

### CONCLUSION

Based on the foregoing, we reverse the summary judgment in favor of the City and render judgment in favor of the Merchants, holding that section 33-455 of the Ordinance is preempted by section 361.0961 of the Act, and therefore unenforceable as a matter of law. We also remand the cause to the trial court to determine whether the Merchants are entitled to an award of attorney's fees under the Declaratory Judgment Act.

Marialyn Barnard, Justice